# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 65

### APRIL TERM, A.D. 2014

### May 22, 2014

TOM D. DAVIDSON,

Appellant
(Plaintiff),

v.

No. S-13-0133

DESIREE A. CARRILLO,

Appellee
Defendant.

*Appeal from the District Court of Sheridan County*
*The Honorable John G. Fenn, Judge*

*Representing Appellant:*

   *Pro se.*

*Representing Appellee:*

   *No appearance.*

*Before KITE, C.J., and HILL, BURKE, DAVIS, and FOX, JJ.*

**NOTICE:** This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BURKE, Justice.**

[¶1]   Appellant, Tom Davidson ("Father"), acting *pro se*, challenges the district court's "Order on Child Custody" and "Order on Child Support."  Although Father was awarded primary physical custody of the parties' minor child, AD, he claims the court abused its discretion by granting Appellee, Desiree Carrillo ("Mother") liberal visitation with AD. Father also claims the court abused its discretion because it did not receive a notarized financial affidavit from Mother before entering the child support order, and because it did not order that Mother's child support obligation would be retroactive to the date of Father's complaint.  Finally, Father claims he was denied due process of law as a result of the district court's limitation on the amount of time Father was permitted to cross-examine Mother at trial.  We affirm.

## ISSUES

[¶2]   Father raises the following issues:

> 1. Did the trial court abuse its discretion in its Order on Custody by granting liberal visitation to Mother?
>
> 2. Are the trial court's Findings of Fact consistent with the evidentiary record?
>
> 3. Did the trial court abuse its discretion in delaying its Order of Support and not ordering support during the pendency of the action?
>
> 4. Was the Appellant denied due process and equal access to the court?

Mother did not file a brief in this appeal.

## FACTS

[¶3]   The parties are the parents of DD, born in 2004, and AD, born in 2009.  In 2009, the Park County District Court awarded Father primary physical custody of DD, subject to Mother's visitation.  The court found that because of DD's special needs, granting primary physical custody to Father was in the child's best interests.[1]  The present case began in January, 2011, when Father filed a "Complaint for Child Custody" in the

---

[1] The custody and support of DD are not at issue in this appeal.

District Court for Sheridan County, where Mother was living at the time, seeking primary physical custody of AD. At the time the complaint was filed, AD was residing in Sheridan with Mother, and Father, who was living in Laramie, did not have visitation rights. Mother answered Father's complaint on January 20, and the matter was set for trial.

[¶4] On March 27, 2012, the day prior to the scheduled trial date, the parties submitted a "Combined and Stipulated Motion to Stay Trial and to Modify Temporary Custody." In that motion, the parties agreed to a temporary custody arrangement for AD that followed the terms of the Park County Custody Order relating to DD. Under the arrangement, AD would live with Father and DD, and Mother would have visitation every other weekend, and on Fridays and Mondays immediately preceding and following weekends in which she did not have visitation. The parties agreed to stay the trial for three months so that they could continue to work toward a permanent custody and support agreement. Mother subsequently moved to Laramie to attend school and to be closer to the children.

[¶5] The parties failed to resolve their differences and the matter proceeded to trial. At trial, Mother was represented by counsel and Father represented himself. Both parties testified, but did not call any other witnesses. Following the trial, the court entered an "Order on Child Custody." In that order, the court granted primary physical custody of AD to Father. The court granted Mother visitation on three weekends per month, and during the evening hours of two weekdays per week. Mother's weekend visitation was ordered to begin after work on Friday and to end at 6:00 p.m. Sunday night. Weekday visitation was ordered to begin after work and to end at 7:30 p.m. The court also ordered Mother to submit an updated financial affidavit so that it could enter a child support order.

[¶6] The district court entered its "Order on Child Support" on April 2, 2013. After noting that the financial affidavits submitted by Father and Mother showed that both parties earned less than minimum wage, the court found that the parties' income should be imputed at minimum wage under Wyo. Stat. Ann. § 20-2-307. Using the presumptive child support guidelines set forth at Wyo. Stat. Ann. § 20-2-304, the court ordered Mother to pay $288.61 per month in child support. Father timely appealed the district court's orders.

## STANDARD OF REVIEW

[¶7] Custody, visitation, child support, and alimony are all committed to the sound discretion of the district court. *Arnott v. Arnott*, 2012 WY 167, ¶ 11, 293 P.3d 440, 444 (Wyo. 2012). Accordingly, we review the district court's decisions relating to child custody and support for abuse of discretion.

We will not interfere with the district court's custody determination absent procedural error or a clear abuse of discretion. In determining whether an abuse of discretion has occurred, our primary consideration is the reasonableness of the district court's decision in light of the evidence presented. We view the evidence in the light most favorable to the district court's determination, affording every favorable inference to the prevailing party and omitting from our consideration the conflicting evidence.

*Durfee v. Durfee*, 2009 WY 7, ¶ 6, 199 P.3d 1087, 1089 (Wyo. 2009) (internal citations omitted).

## *DISCUSSION*

[¶8]   In his first issue, Father contends the district court abused its discretion by granting Mother liberal visitation with AD.  According to Father, the district court's order "effectively gives [Mother] more parenting time than [Father], thus circumventing the rationale for awarding primary custody to Father."  Father asserts that he receives less parenting time than Mother under the district court's order "[i]f parenting time is defined by awake, non-typical working hours."  He also claims that the court abused its discretion because the child custody order separates AD from DD "during significant portions of the visitation."  Ultimately, Father asserts that, despite the award of primary physical custody to Father, the district court's order results in a "shared" or "divided" custody arrangement.  We do not agree.

[¶9]   In the proceedings below, Mother requested a custody arrangement in which she would have AD at night and Father would have AD during the day.  Mother claimed that this arrangement was in AD's best interests because it would give both parents roughly equal time with AD.  The district court, however, after considering the factors set forth at Wyo. Stat. Ann. § 20-2-201 for determining the best interests of the child, concluded that such an arrangement was not in AD's best interests.[2]  The court stated that

---

[2] Wyo. Stat. Ann. § 20-2-201 provides, in relevant part, as follows:

**§ 20-2-201. Disposition and maintenance of children in decree or order; access to records.**

(a) . . . In determining the best interests of the child, the court shall consider, but is not limited to, the following factors:

(i) The quality of the relationship each child has with each

3

Here, both parents are fit and competent to care for the child. Both parties testified that they value and appreciate the other's parenting style and they feel that the children benefit from spending time with both of them. However, the parents have vastly different parenting styles, and the evidence shows that they cannot successfully co-parent the child in a divided custody arrangement. Therefore, the Court must determine which parent will serve as the primary custodial parent.

The court noted that the evidence showed that "the parties have made attempts to help the child maintain and strengthen her relationship with the other parent. The Father presented evidence that since A.D. has come to live with him he has made an effort to invite the Mother to participate in many of the child's activities . . . ." Ultimately, the

parent;

(ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;

(iii) The relative competency and fitness of each parent;

(iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;

(v) How the parents and each child can best maintain and strengthen a relationship with each other;

(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;

(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;

(viii) Geographic distance between the parents' residences;

(ix) The current physical and mental ability of each parent to care for each child;

(x) Any other factors the court deems necessary and relevant.

4

court concluded that "Continuing to reside with the Father while having liberal visitation with the Mother will allow the child to maintain and strengthen the relationship she has with both of her parents." Contrary to Father's claims, the district court did not order a "shared" or "divided" custody arrangement. Further, we are not persuaded by Father's argument that the district court's order resulted in *de facto* shared custody. Father does not provide any support either for his definition of "parenting time," or for the proposition that the concept of "parenting time" is used as a criterion for determining whether a custody arrangement results in "shared" or "divided" custody.[3] In any event, under the district court's order, Mother and Father do not share equal physical custody of AD. Under the custody order, Mother has visitation with AD on three weekends per month, for approximately 48 hours, and on two weekdays per week. Mother's weekday visitation is approximately two-and-a-half hours.[4] Based on the fact that Mother's visitation is limited to these specific times, we cannot conclude that the custody arrangement ordered by the district court results in *de facto* shared custody.

[¶10] Additionally, we are not persuaded by Father's claim that the court abused its discretion because the custody order separates AD from her brother during "significant portions of the visitation." Father cites *Aragon v. Aragon*, 2005 WY 5, 104 P.3d 756 (Wyo. 2005) for the proposition that awarding primary physical custody of siblings to separate parties is generally not preferred:

> [G]enerally speaking the separating of siblings through custody awards to different parents is not preferred. Keeping siblings together in the same household is considered the better practice. However, this court clarified that the effect of separating siblings from each other is just **one** of several factors courts consider in determining the primary issue-the best interests of the children. *Dowdy* [*v. Dowdy*, 864 P.2d 439], 440 [(Wyo. 1993)] (citing Jay M. Zitter, Annotation, *Child Custody: Separating Children by Custody Awards to Different Parents-Post-1975 Cases*, 67 A.L.R. 4th 354, § 2[a]

---

[3] We have previously noted that the term "parenting time" is not defined in any Wyoming statute. *Testerman v. Testerman*, 2008 WY 112, ¶ 11, 193 P.3d 1141, 1145 (Wyo. 2008). The term "parenting time," however, has been equated with "visitation," and has been used in our precedent exclusively with reference to the non-custodial parent, and not to the parent having primary physical custody. *See, e.g., id.*; *Tafoya v. Tafoya*, 2013 WY 121, ¶ 3, 309 P.3d 1236, 1238 (Wyo. 2013).

[4] Mother's testimony at trial indicated that her work schedule is not consistent. During the time that the parties stipulated to stay the trial, however, they agreed to arrange visitation to begin at 5:00 p.m. because Mother could not get off work earlier. Under the custody order, Mother's weekday visitation ends at 7:30 p.m.

(1989) and *In re Marriage of Barnthouse*, 765 P.2d 610 (Colo. App. 1988)).

*Aragon*, ¶ 24, 104 P.3d at 763 (emphasis in original). The Park County Custody Order relating to DD is not contained in the record, and Father does not identify the times at which AD and DD are separated as a result of the custody order entered in the present case. More significantly, this case does not present an issue of "the separating of siblings through custody awards to different parents." Rather, the district court granted primary physical custody of AD to Father, consistent with the custody arrangement under the Park County Custody Order relating to DD. The court's decision in this case was clearly based, at least in part, on the desire to keep the children together. As noted by the court,

> The parents both expressed a desire to keep the children together. However, D.D.'s custody was not before this Court. The parties presented evidence that D.D. and A.D. have a very close relationship, and that maintaining this relationship [is] in the best interests of both children. Awarding custody of A.D. to the Father with liberal visitation with the Mother allows both of the children to remain in the same residence and continue building their relationship with each other.

We find no abuse of discretion resulting from the possibility that AD and DD may not be together for the entirety of Mother's visitation with the children.

[¶11] Father also contends the district court abused its discretion by finding that Mother is a fit parent. This claim, however, contradicts numerous statements made by Father at trial, including the following:

> . . . Your Honor, this isn't a custody case where there's one [party that's] abusive or a meth addict[.] [B]oth parents are relatively competent and fit to be parents, both parents have their child's interest at heart, but, Your Honor, that's about where the similarities stop.
>
> Desiree and I are dramatically different. We have different cultures, we have different value systems, and significantly different religions. Our personalities and problem-solving strategies and lifestyles are at odds with each other. Most often there's not a label of good or bad for these differences, they're just different.

Additionally, Father asserted that the reason Mother had missed prior visitations with the children was because "she's been focused on school and work, with the idea of being a

6

better mother, because she has those abilities now." Father stated that the children needed "consistent and frequent visitation with their mom" and elaborated on his reasons for thinking so:

> . . . Your Honor, [I've] found – I've recently learned through my Parenting Intervention 101, that there's another type of program called Conflictual Parenting [sic], and the goal is to take out the conflict between the parents, and one thing I love about this, Your Honor, is [that] Desiree and I are pretty much already doing it, and that gives me confidence that both kids can have a loving and nurturing relationship with both their parents, without having to be forced to make decisions together and have the same parenting style. The goal of Conflictual Parenting [sic] is to stop the fighting and promote each parent's relationship.
>
> You know, I don't agree with Desiree's parenting, but I certainly value it. I think it's important to my kids to have Desiree in their life. Desiree does stuff on, you know, on her time with them that I want to do, and that's just great because that's their mom time. And, Your Honor, I do value Desiree in the kids' life [sic] and I do want those kids to have time with her.
>
> . . .
>
> And, Your Honor, . . . I truly believe that after this court litigation is over that, you know, if my claim prevails, that Desiree and I will be successful and effectual co-parents and that the kids would benefit from an order that puts [AD] in the same home as [DD] and puts them together.

In light of Father's statements that Mother was a "competent" and "fit" parent, and that she would be a "successful and effectual co-parent," we find it difficult to understand Father's claim on appeal that the district court abused its discretion in finding that Mother is a fit parent. Father largely received the custody arrangement that he requested. As noted above, that arrangement does not result in "divided" or "shared" custody. Based on this finding, as well as Father's statements at trial, we find no abuse of discretion in the visitation schedule ordered by the district court.

[¶12] In his next issue, Father claims the district court abused its discretion in its Order on Child Support. Father contends the court did not comply with Wyo. Stat. Ann. § 20-2-308(a) because it did not timely receive a proper financial affidavit from Mother before

entering the child support order. Father also asserts that the district court abused its discretion because it did not order that Mother's child support obligation would be retroactive to the date of Father's complaint.

[¶13] Wyo. Stat. Ann. § 20-2-308 (LexisNexis 2013) requires that the court receive evidence of the parties' financial status before entering an order establishing child support. The statute provides, in relevant part, as follows:

> **§ 20-2-308. Financial affidavits required; financial reporting.**
>
> (a) No order establishing or modifying a child support obligation shall be entered unless financial affidavits on a form approved by the Wyoming supreme court which fully discloses the financial status of the parties have been filed, or the court has held a hearing and testimony has been received.
>
> . . .

In its Order on Child Custody, entered on January 25, the district court directed Mother to submit an updated financial affidavit within ten days of the entry of the order. On February 5, Mother submitted a supplemental financial affidavit that was not signed or notarized. She subsequently submitted a signed and notarized affidavit on February 25, and the district court entered its Order on Child Support on April 2. Father contends the district court did not comply with the statute because it received a financial affidavit from Mother that was not notarized and that was filed outside the ten-day deadline in the court's custody order. We are not persuaded by Father's argument. Wyo. Stat. Ann. § 20-2-308 contains no timing requirement relating to the filing of a financial affidavit, and Mother filed a signed and notarized financial affidavit before the district court entered its child support order. Father was not prejudiced in any manner by the delayed filing. Accordingly, we reject Father's claim of error.

[¶14] We are also not persuaded by Father's claim that the district court abused its discretion because it did not order child support retroactive to the date of his complaint for child custody. Father did not request that child support be made retroactive to the date of his complaint at any time prior to the district court's entry of its Order on Child Support. Additionally, Father has presented no authority indicating that the court is required to order support retroactive to the beginning of an action for child custody. As a result, we find no merit in Father's claim.

[¶15] Finally, Father contends that he was denied due process of law because he was allowed only five minutes to cross-examine Mother at trial, and because he was not allowed to present rebuttal evidence. With respect to the due process right to a

meaningful hearing, we have stated as follows:

> Notice and the opportunity to be heard are touchstones of due process. *Pecha v. Smith, Keller & Associates*, 942 P.2d 387, 391 (Wyo. 1997). The opportunity for hearing must be "'appropriate to the nature of the case,'" and must be "'at a meaningful time and in a meaningful manner.'" *Jones v. Jones*, 903 P.2d 545, 548 (Wyo. 1995) (quoting *Moore v. Board of Educ. of Fulton Public School No. 58*, 836 S.W.2d 943, 947 (Mo. 1992)). *See DH v. Wyo. Dep't of Family Servs.*, 2003 WY 155, ¶ 38, 79 P.3d 997, 1008 (Wyo. 2003). In certain circumstances, time limits on trial presentations might deprive a party of a meaningful hearing. *See, e.g., In re Marriage of Goellner*, 770 P.2d 1387, 1389 (Colo. App. 1989) ("[B]ecause the mother was allotted only one-half hour to present her case-in-chief, we conclude that she was denied due process.").

*JKS v. AHF (In re ARF)*, 2013 WY 97, ¶ 28, 307 P.3d 852, 858 (Wyo. 2013). "The party claiming an infringement of his right to due process has the burden of demonstrating both that he has a protected interest and that such interest has been affected in an impermissible way. The question is whether there has been a denial of fundamental fairness." *DH*, ¶ 38, 79 P.3d at 1008.

[¶16] In the present case, Father did not object to the district court's time limit for cross-examination, and he made no offer of proof with respect to the evidence that would have been presented in rebuttal to Mother's testimony. Similarly, on appeal, Father does not identify any evidence that additional cross-examination would have elicited, or the evidence that he would have presented in rebuttal. Father does not attempt to demonstrate how the alleged deprivation of due process caused him prejudice or affected his interests in an impermissible way. Accordingly, we are unable to find that the district court's limitation of Father's cross-examination resulted in any deprivation of Father's right to due process of law.

[¶17] Affirmed.